# EXHIBIT "F"



# VAS Aero Services, LLC

## Code of Business Conduct

2011



## Table of Contents

FOREWORD ................................................................................................................. I

OUR FUNDAMENTAL VALUES .................................................................................. 1

GENERAL PRINCIPLES OF BUSINESS CONDUCT ................................................. 2

COMPLIANCE AND DISCIPLINARY ACTION ........................................................... 3

    1. BUSINESS COURTESIES, BRIBES & KICKBACKS ........................................ 4
    2. CONFLICTS OF INTEREST .............................................................................. 6
    3. CONFIDENTIAL/PROPRIETARY INFORMATION ............................................ 6
    4. EMPLOYMENT DISCUSSIONS WITH CURRENT OR FORMER U.S. GOVERNMENT PERSONNEL ........... 7
    5. COMPLETE AND ACCURATE BOOKS AND RECORDS ................................ 7
    6. PRODUCT QUALITY ......................................................................................... 7
    7. CONSULTANTS, AGENTS AND REPRESENTATIVES .................................. 8
    8. ANTITRUST ....................................................................................................... 9
    9. ANTI-BOYCOTT .............................................................................................. 10

A FINAL WORD ........................................................................................................ 11

ACKNOWLEDGMENT .............................................................................................. 12



**With respect to *non-monetary gifts*, VAS policy is that if the item is valued at less than US $25, you may accept it. If valued at more than US $25 the item must be turned in to Human Resources, where it will be held for auction or as a prize at a VAS event.**

Particular caution must be exercised when the offeror works for a non-government entity with whom VAS has or may have a contractual or subcontract relationship related to a *government* contract, in which case no meals, refreshments, entertainment or nonmonetary gifts of more than <u>nominal</u> value should be accepted.

### 2. Conflicts of Interest

You have a primary business responsibility to VAS and are expected to avoid any activity that may interfere, or has the appearance of interfering, with the performance of this responsibility. **A conflict of interest exists if you are involved in an activity or have a personal interest that might interfere with your ability to perform, or objectivity in performing, your VAS duties and responsibilities.** If you believe you may have a potential or actual conflict of interest it is your responsibility to report such matter to your immediate supervisor or the Legal Department for review.

In taking stock of your activities and interests, bear in mind that even the most conscientious person may be unconsciously influenced, and the mere existence of that interest may cause the propriety of your acts to be questioned by others, both inside and outside the company.

#### A. Investments

**If you own a material financial interest in a competitor, vendor or customer of VAS, you must disclose that fact** to your immediate supervisor or the Legal Department. "Material" is best defined in this context as significant, or having the ability to substantially impact your finances or that of the company in which you own an interest.

#### B. Outside Activities

You may have a conflict of interest if your outside activity is so demanding on your time as to interfere with your job performance. Such an activity is prohibited.

**You must also disclose to your immediate supervisor or the Legal Department whether you serve or have been solicited to serve as an agent of or consultant to, or as a director, officer, or part-time employee of a company that competes with or conducts business with VAS, or that seeks to do so.**

### 3. Confidential/Proprietary Information

Information is an asset as valuable in many cases as money. Without exception, **all of our business must be conducted in such a manner as to preclude the unlawful acquisition, receipt, possession, conveyance, dissemination or use of confidential or proprietary information.** This policy applies with respect to both commercial and government business, where several federal statutes and regulations control.

Additionally, much of the knowledge and information you acquire in the course of your employment at VAS must be protected and <u>used only for VAS business</u>. Examples of such information are:



- New business plans
- Employee, customer and vendor information
- Customer requirements, preferences and plans
- Any information submitted to VAS by others, that we agreed to protect
- Sales, profits, costs and pricing data
- Salary, wage and benefits data.

### 4. Employment Discussions with Current or Former U.S. Government Personnel

Because of the complexity of the law in this area, with respect to all current or former government employees, Human Resources or the Legal Department should be contacted prior to having any employment related discussions.

### 5. Complete and Accurate Books and Records

In order to provide an accurate and auditable record of all financial transactions, **all VAS books, records, and accounts must be maintained in conformity with Generally Accepted Accounting Principles and the standards established by all applicable laws and regulations**. In order to achieve this, it is essential that all procedures set forth in the VAS Operational Management System ("OMS") be followed. VAS policy requires that:

- All VAS business documents, financial or otherwise, including time sheets, internal or external correspondence, memoranda, or communication of any type, must be prepared as completely, honestly and accurately as possible
- All disbursements of funds and all receipts must be properly and promptly recorded
- All actions are to be taken only by personnel authorized to take such action, and following the company's policies and procedures
- No undisclosed fund may be established for any purpose
- No costs shall be allocated to any contract contrary to the contract's provisions or accepted accounting practices

Penalties for violating VAS policies or procedures and/or the law with respect to accuracy of books and records are particularly severe. Employees can expect to be disciplined for negligent violations and terminated for willful violations of policies and procedures, and can anticipate criminal referral for willful violations of law. As with all of the policies contained in this Code, you may not attempt to perform through another that which would be prohibited if done by you.

### 6. Product Quality

# EXHIBIT "G"



GA Telesis, LLC
1850 NW 49th Street
Ft. Lauderdale, FL 33309
Tel: +1-954-676-3111
Fax: +1-954-676-9998
Web: www.gatelesis.com

## EMPLOYMENT MEMORANDUM OF UNDERSTANDING

Dear Mr. Arroyo,

Thank you for taking the time to discuss employment opportunities with GA Telesis LLC. We are excited with the prospect of you joining our dynamic team and assisting us with our rapidly growing enterprise. We have prepared this document as an outline and to ensure clarity of our mutual expectations.

THIS EMPLOYMENT MEMORANDUM OF UNDERSTANDING ("Agreement"), made as of this 14th day of March 2012, by and between GA Telesis, LLC, a Delaware limited liability company (the "Company") and Mr. Phillip A. Arroyo ("Employee") (Company and Employee are sometimes individually referred to herein as a party and collectively as the "Parties"). The first day of actual Employment shall coincide with execution of the Agreement between the Company and the Employee and the Employee's ability to commence working on a fulltime basis for the Company at the Company. The commencement day shall be targeted for on or about April 1, 2012.

1. <u>Employment</u>. Employee shall serve as Vice President of Defense & Government Systems on the terms and conditions hereinafter set forth. Employee agrees that he will perform the duties assigned to him by the Managers of the Company, at all times to the best of his ability, conscientiously, energetically, expeditiously. Employee will render to the Company at regular and frequent intervals, as set by the Company, reports and accountings of the status and progress of any work he is performing. Employee shall be required to do such traveling as may be necessary to perform his duties and responsibilities hereunder.

2. <u>Term.</u> The Company is an "AT Will" employer as permitted by Florida law.

3. <u>Compensation</u>. For services rendered by Employee under this Agreement during the period of Employment, Employee shall be entitled to receive a base annual salary in the amount of One Hundred Thousand Dollars ($100,000.00), payable in accordance with the Company's customary payroll procedures ("Base Salary"). The Employees shall also be eligible for bonus based on the following performance parameters;
   - Twenty-five Thousand dollars ($25,000.00) for Five Million Dollars ($5,000,000.00) in revenue generated within a calendar year directly from inventories acquired and sales that the employee is directly responsible for with a minimum margin of 15%.
   - Fifty Thousand dollars ($50,000.00) for Ten Million Dollars ($10,000,000.00) in revenue generated within a calendar year directly from inventories acquired and sales that the employee is directly responsible for with a minimum margin of 15%.

4. <u>Insurance and Other Benefits</u>. Employee shall be entitled to participation in the Company's 401K retirement plan and insurance and other benefits. Currently, Vice President level employees' insurance

costs (excluding medical visit co-pays and deductibles) are covered by the Company after ninety days of employment.

Any amounts the Company pays for insurance coverage or fringe benefits that are supplemental to or in addition to the Company's standard insurance coverage or benefits shall be compensation in addition to Base Salary (but not included within the definition of Base Salary for purposes of this Agreement) and shall be reflected on Employee's W-2.

5.  Vacation. The Employee shall be granted two-weeks of vacation at one year of employment in accordance with the Company's published handbook. The Company reserves the right to change its vacation policy annually.

6.  Travel. Employee understands that travel may be required on a frequent basis and that he may be required to stay in Ft. Lauderdale for prolonged periods of time.

7.  Confidentiality. Employee covenants and agrees that all Secret Information and all physical embodiments thereof received or developed by him as of the date hereof or hereafter in the performance of his duties for the Company is confidential to and is and will remain the sole and exclusive property of the Company. Employee will hold such Secret Information in trust and strictest confidence, and will not use, reproduce, distribute, disclose or otherwise disseminate the Secret Information, except to the extent necessary in connection with activities undertaken by him as an employee of the Company or in his capacity as an Economic Interest Owner. The confidentiality requirements and use restrictions contained in this Section 10 shall survive any termination of this Agreement but shall not apply (i) to any information that falls into the public domain through no fault of Employee or (ii) to Secret Information (defined below) which is not Trade Secrets when a period of ten (10) years has expired following the termination of his Employment.

"Secret Information" means information owned by the Company which (1) derives economic value, actual or potential, from not being generally known to or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The term "Secret Information" does not include any information which at the time of disclosure is generally known by the public.

Secret Information includes "Trade Secrets" which is information that meets the foregoing criteria and includes, without limitation, technical and non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, pricing information, marketing information and lists of actual or potential acquisition candidates, potential sites for development and suppliers. Secret Information also includes information which has been disclosed to the Company by a third party and which the Company is obligated to treat as confidential.

All records, notes, files, memoranda, reports, marketing information, price lists, supplier lists and information, documents, financial models, spreadsheets, methods of calculation, and all copies thereof, equipment, and apparatus and like items relating to the business of the Company, Secret Information or Trade Secrets which shall be prepared by Employee in his capacity as an Economic Interest Owner or as an employee or which shall be disclosed to or which shall come into the possession of Employee shall be and remain the sole and exclusive property of the Company. At any time upon request, Employee will promptly deliver to the Company the originals and all copies of any of the foregoing that are in his possession, custody or control, and any other property belonging to the Company.

8. <u>Governing Jurisdiction; Venue</u>. The validity and construction of this Agreement shall be governed by the laws of the State of Florida, without regard to conflicts of law principles. The parties agree that, with respect to any legal action arising out of this Agreement, they consent to personal and subject matter jurisdiction in the United States Federal Courts located in Florida and that venue shall be had solely such courts.

9. <u>Notices</u>. All notices, demands or communications required or permitted under this Agreement will be in writing and delivered by hand or mailed by certified mail, return receipt requested, postage and registration or certification charges prepaid, or by nationally recognized overnight courier service, to the party entitled thereto at the addresses set forth below, or such other party(ies) or address(es) as a party specifies by written notice to the other parties from time to time, and shall be deemed delivered or served at the date of delivery by said courier service or two (2) days after deposit of said notice, demand or communication in the U.S. mail. Rejection or the refusal to accept or the inability to deliver because of a change in address of which no notice was given as provided herein shall be deemed to be a receipt of the notice sent as of the third (3rd) calendar day subsequent to the delivery receipt date, or postmark date, as the case may be. By giving to the other parties hereto at least ten (10) days prior written notice thereof, any party hereto shall have the right from time to time and at any time while this Agreement is in effect to change the respective addresses thereof and each shall have the right to specify as the address thereof any other address. Any legal counsel designated by Employee or the Company by written notice to the other parties is authorized to give or receive notices under this Agreement on behalf of its respective client. Each notice to the Company and Employee shall be addressed, until notice of change as aforesaid, as follows:

> If to the Company:     GA TELESIS, LLC
> 1850 NW 49th Street
> Ft. Lauderdale, FL 33309
>
> If to Employee:     Mr. Phillip A. Arroyo
> 2935 Cliffs Lane N.E.
> Olympia, Washington, 98506

10. <u>Required Deductions or Withholdings</u>. All amounts payable to Employee pursuant to this Agreement (whether as Base Salary or otherwise) shall have deducted or withheld therefrom by the Company such amount or amounts as may be required to be so deducted or withheld pursuant to applicable federal, state or local laws.

11. <u>Entire Agreement and Amendment</u>. This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior discussions, understandings and agreements among the parties hereto. Any such prior agreements shall, from and after the effective date hereof, be null and void. This Agreement may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

12. <u>Waiver</u>. The waiver by one party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach of the same or any other provision by the other party.

13   Survival. The agreements and covenants set forth in this Agreement shall survive any termination hereof and continue until all obligations set forth herein shall have been performed and satisfied.

14.   Counterparts; Facsimile Signatures.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Delivery by a party of executed counterparts of this Agreement by facsimile shall constitute execution and delivery of such counterpart by such party to the same extent as if such counterpart were originally executed and delivered by such party.

15.   Waiver of Jury Trial.   IN ANY CIVIL ACTION, COUNTERCLAIM, OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, WHICH ARISES OUT OF, CONCERNS OR RELATES TO THIS AGREEMENT, ANY TRANSACTIONS CONTEMPLATED HEREUNDER, THE PERFORMANCE HEREOF OR THE RELATIONSHIP CREATED HEREBY, WHETHER SOUNDING IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, TRIAL SHALL BE TO A COURT OF COMPETENT JURISDICTION AND NOT TO A JURY. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT (STATUTORY, CONSTITUTIONAL, COMMON LAW OR OTHERWISE) IT MAY HAVE TO A TRIAL BY JURY. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE WAIVER OF THE OTHER PARTIES' RIGHT TO TRIAL BY JURY. NO PARTY HAS MADE OR RELIED UPON ANY ORAL REPRESENTATIONS BY ANY OTHER PARTY REGARDING THE ENFORCEABILITY OF THIS PROVISION.  EACH PARTY HAS READ AND UNDERSTANDS THE EFFECT OF THIS JURY WAIVER PROVISION.

16.   Representation of Employee.   Employee represents and warrants that (i) he has full power and authority to enter into this Agreement and (ii) the execution and delivery of this Agreement by Employee and the performance by Employee of his obligations hereunder will not (a) conflict with, result in any breach of, or constitute a default (or an event which would, with the passage of time or the giving of notice or both, constitute a default) under, or give rise to a right to terminate, amend, modify, abandon or accelerate, any agreement which is applicable to, binding upon or enforceable against Employee and (b) require the consent, approval, authorization or permit of, or filing with or notification to, any entity or person.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date hereinbefore set forth.

Company:
GA TELESIS, LLC

By:

Title:

EMPLOYEE:

_____
Mr. Phillip A. Arroyo

# EXHIBIT "H"



**[ PRESS RELEASES AND NEWS ]**

**March 2012 – GA TELESIS ANNOUNCES NEW HEAD OF DEFENSE & GOVERMENT SUPPORT BUSINESSES**

FT. Lauderdale, FL – GA Telesis, LLC ("GAT") announced Phil Arroyo will head GA Telesis' Defense & Government Support Businesses. Phil will oversee the development and implementation of the business model and report into the Senior Vice President of Global Sales.

Phillip Arroyo has almost three decades of direct industry experience spanning from twelve years at Volvo Aero Services where he was responsible for oversight of their defense business. Prior to that he spent 16 years at the Boeing Company in various roles encompassing, Supplier Management, AOG Support, Regional Account Management and Customer Service.

"Phil brings a wealth of direct knowledge and experience to our executive team," said Paul Lochab, Sr. Vice President of Global Sales. His hands-on approach will bring immediate utility to our current and potential defense and government customers," he added.

"GA Telesis has fast grown to the leadership position in the commercial aviation industry and I plan to take their commitment of service, quality and reliability levels to a new industry sector that has long awaited a customer-tailored approach, said Phil Arroyo, Vice President of Defense & Government Support Businesses. I am excited about the enthusiasm I am already receiving from the defense industry," he added.

GA Telesis is a diversified global leader in the commercial aerospace services industry with financial services, component sales and distribution, as well as component maintenance facilities throughout the United States, Canada, United Kingdom, and Singapore. GA Telesis specializes in commercial aircraft and jet engine leasing, component maintenance as well as maintaining one of the world's most comprehensive and independent replacement aerospace component inventory networks. GA Telesis serves the world's largest airlines with financial services related to aircraft and jet engines as well as component and maintenance support for Airbus, Boeing, Bombardier, Douglas and Embraer aircraft and CFM International, General Electric, Honeywell, International Aero Engine, Pratt & Whitney, and Rolls-Royce turbine jet engines.

For further information please contact:

Beth Ginzberg at +1-954-676-3111 or bginzberg@gatelesis.com

**Year Released:**
2012
2011
2010
2009
2008
2007
2001

**March 2012 – GA TELESIS EXPANDS INTO DEFENSE & GOVERMENT SUPPORT BUSINESSES**

FT. Lauderdale, FL – GA Telesis, LLC ("GAT"), today announced that in conjunction with its current operations that currently provide maintenance services for defense and government customers, it has expanded its service offerings to include component support solutions for defense and government applications. The new operation will have its principal headquarters in Ft. Lauderdale, Florida.

"We are now able to provide our military and government customers a dependable choice for a significant amount of their component solutions and maintenance needs," stated Abdol Moabery, Chief Executive Officer of GA Telesis. "Our track record reflects our ability to quickly integrate into this sector, but we will also initiate a mergers and acquisitions strategy to enable us to make the greatest possible impact," he added.

The Company intends to announce key group management changes and additions in the coming weeks.

GA Telesis is a diversified global leader in the commercial aerospace services industry with financial services, component sales and distribution, as well as component maintenance facilities throughout the United States, Canada, United Kingdom, and Singapore. GA Telesis specializes in commercial aircraft and jet engine leasing, component maintenance as well as maintaining one of the world's most comprehensive and independent replacement aerospace component inventory networks. GA Telesis serves the world's largest airlines with financial services related to aircraft and jet engines as well as component and maintenance support for Airbus, Boeing, Bombardier, Douglas and Embraer aircraft and CFM International, General Electric, Honeywell, International Aero Engine, Pratt & Whitney, and Rolls-Royce turbine jet engines.

For further information please contact:

Beth Ginzberg at +1-954-676-3111 or bginzberg@gatelesis.com

**March 2012 – GA TELESIS SIGNS MATERIAL SUPPORT AGREEMENT FOR ENGINE COMPONENTS WITH EVERGREEN AVIATION TECHNOLOGIES**

FT. LAUDERDALE, FLORIDA — March 1, 2012 GA Telesis, a global leader in commercial aerospace services, announced today that it has been awarded a supply chain agreement for the support of CF6-80C2 engine components with Evergreen Aviation Technologies (EGAT). Under the agreement, GA Telesis will be a preferred supplier to provide CF6-80C2 engine materials for EGAT's maintenance operations.

"Our support of EGAT's maintenance of CF6-80C2 engines corroborates our culminated efforts to support EGAT's supply-chain and overhaul operations with top-quality material that will provide a lower cost alternative for their customers. We are looking forward to the further growth and development of the relationship and joint collaboration on future projects", said Abdol Moabery, President & CEO of GA Telesis.

GA Telesis is a global leader in the commercial aerospace support industry. With sales, distribution and maintenance facilities throughout the United States, Canada and the United Kingdom, GA Telesis specializes in commercial aircraft and jet engine leasing, component maintenance, as well as maintaining one of the world's largest replacement aerospace component inventory networks. GA Telesis serves the world's largest airlines and maintenance organizations with support for Airbus, Boeing, Bombardier, Douglas and Embraer aircraft and components as well as CFM International, General Electric, Honeywell, International Aero Engine, Pratt & Whitney and Rolls-Royce turbine jet engines and replacement components.

For further information please contact

Beth Ginzberg at +1-954-676-3111 or bginzberg@gatelesis.com

**January 2012 – GA Telesis Names Irvin Lucas, Vice President of its Consumable & Expendable ("C&E") and Supply-Chain Programs Division**

FT. Lauderdale, FL - GA Telesis named Irvin Lucas, Vice President of its C&E and Supply-Chain Programs division, effective immediately. Consisting of two business units – Consumable and Expendable supply as well as Supply-Chain Programs, Mr. Lucas will oversee all group operations from the Company's Ft. Lauderdale headquarters.

Prior to this position, Mr. Lucas held the position of Vice President of Contractual Programs where he oversaw all supply-chain management contracts. Mr. Lucas has over thirty years of direct industry experience and has held management and executive level positions at General Electric, Pratt & Whitney, Aero-Maintenance Group (AF-KLM), AAR Corp., Northwest Airlines, Kellstrom Industries and Volvo Aero.

Mr. Lucas will be tasked with an aggressive growth strategy consisting of increased and enhanced capabilities through exponential growth targets that are within the sights of the Company.

GA Telesis is a global leader in the commercial aerospace support industry. With sales, distribution and maintenance facilities throughout the United States, Canada and the United Kingdom. GA Telesis specializes in commercial aircraft and jet engine leasing, component maintenance, as well as maintaining one of the world's largest replacement aerospace component inventory networks. GA Telesis serves the world's largest airlines and maintenance organizations with support for Airbus, Boeing, Bombardier, Douglas and Embraer aircraft and components as well as CFM International, General Electric, Honeywell, International Aero Engine, Pratt & Whitney and Rolls-Royce turbine jet engines and replacement components.



# EXHIBIT "I"



Jason S. Oletsky

Akerman Senterfitt
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999
Tel: 954.463.2700
Fax: 954.463.2224

Dir: 954.759.8909
jason.oletsky@akerman.com

March 23, 2012

**VIA E-MAIL AND FEDERAL EXPRESS**

Mr. Phil Arroyo
2935 Cliffs Lane N.E.
Olympia, WA 98506

Re: VAS Aero Services, LLC Confidentiality Agreement

Dear Mr. Arroyo:

The undersigned represents VAS Aero Services, LLC ("VAS" or the "Company"). We have been asked to contact you regarding the serious matters set forth in this letter prior to filing suit and seeking preliminary injunctive relief and damages against you as a result of your misappropriation and theft of Company information, including, but not limited to confidential, proprietary and trade secret information relating to VAS's contracts and relationship with its customers, including Boeing, and your new employment with GA Telesis. Your actions are in clear breach of the various confidentiality agreements and disclosures signed by you over the course of your employment with the Company and constitutes, among other things, gross violations of the Uniform Trade Secret Act and its state law counterparts in Washington and Florida. Please direct all further communications concerning this matter to my attention.

As VAS's former Director of Military and Defense, you are undoubtedly aware that each of the confidentiality agreements and disclosures you signed or acknowledged required you to maintain the Company's trade secret, proprietary and confidential information (collectively, "Confidential Information"), and contained restrictions from improper disclosure of such information. Specifically, you expressly agreed not to use or disclose any of the Company's Confidential Information or take any actions that would constitute or facilitate the disclosure of Confidential Information, including, but not limited to the nature and terms of VAS's relationships with its clients, suppliers and vendors, product service costs and prices, sales information, operational information and marketing strategies and plans. Any disclosure, whether inadvertent or not, would, as recognized by you, cause irreparable harm to VAS.

Mr. Phil Arroyo
March 23, 2012
Page 2

---

The Company is aware of your misappropriation of its Confidential Information, including all VAS customer files maintained by you in your office. Indeed, such unlawful behavior is further aggravated by the fact that while with the Company, you personally were charged with taking reasonable and adequate measures to safeguard the secrecy of all military and defense contracts and customer information, including all Boeing information, and in undertaking such responsibility, you insisted that all such documentation be stored under lock and key in your office.

Based upon your former senior role with the Company, VAS was disappointed to learn of the global announcement emailed by you to Company clients and contacts informing them of your new employment with GA Telesis, all while you were still employed with VAS. The March 22, 2012 press release by GA Telesis of its decision to expand operations into component support solutions for defense and government applications -- the identical role you served with VAS -- serves merely to confirm and magnify the damages now caused by your unlawful and illicit acts.

VAS demands that you cease and desist from using any of VAS's Confidential Information, including, but not limited to, customer information and pricing information, to improperly solicit any VAS customer with whom VAS has an existing or prospective business relationship. VAS further demands that you and anyone you are affiliated with immediately return all property of VAS by overnight mail and purge all copies thereof. VAS finally demands that you advise this law firm in writing under oath that all Company property has been returned and all copies have been properly destroyed.

VAS is prepared to take immediate legal action against you and your new employer, GA Telesis. Therefore, unless you take these corrective actions by Wednesday, March 28, 2012, at 5:00 p.m. EDT, and advise the undersigned of your compliance with these demands in writing under oath, VAS will seek all available remedies, including money damages and injunctive relief, plus attorneys' fees and costs.

Lastly, given the strong possibility of litigation as a result of your improper conduct, you are hereby placed on notice to preserve all potential evidence related to the above-claims. **Specifically, you must not destroy, delete, modify or discard any documents, e-mail messages, files or information, in electronic, paper or any form of media, related to this dispute on any work or home computer.** If you choose to do otherwise, the Company will treat this matter with the utmost seriousness and will seek any and all available civil remedies and sanctions.

**PLEASE BE GOVERNED ACCORDINGLY.**

{23913838;1}

Mr. Phil Arroyo
March 23, 2012
Page 3

Very truly yours,

AKERMAN SENTERFITT

Jason S. Oletsky

cc: Adam Herman
Kevin Hartney, Esq.

{23913838;1}